## Case No. 12,181.

### The R. W. SKILLINGER.

[1 Flip. 436;[1] 6 Am. Law Rec. 352; 2 Cin. Law Bul. 257.]

District Court, S. D. Ohio. June 9, 1875.

MARITIME LIENS — WAIVER — NOTES GIVEN — ASSIGNMENT — EXTINCTION — ADMIRALTY — INTERVENERS.

1. No one can intervene and defend in admiralty in rem, unless it appears by the answer and claim that he has a lien or proprietary interest in the vessel seized.

2. The acceptance of a note by the creditor does not waive the lien, unless it was accepted as payment.

3. The lien does not follow the assignment of the note, nor can the assignee, either in his own, or in the name of the payee, maintain an action to enforce such lien.

4. When the creditor has disposed of his interest in the claim, the lien becomes extinct, as it is strictly personal.

5. If the creditor, as indorser, afterwards pay off the note—this would not revive, or enable him to enforce the lien.

In admiralty.

Cox & Collett, for libellant.

Matthews & Matthews, for defendant.

SWING, District Judge. The libel was originally filed in the name of Cobb, Stribbling & Co., for the use of the First National Bank, of Madison, Indiana. To this libel an answer and claim was filed by W. G. McCoy on behalf of the owner of the steamboat. It nowhere appears in this claim and answer who the owner of said boat is, nor does it appear anywhere in the verification that the claimant on whose behalf the claim is made, is the true and bona fide owner, and that no other person is the owner thereof.

It also appeared in the original libel that the amount claimed was for repairs, and was properly, originally, an admiralty lien, but that same had been assigned by the firm of Cobb, Stribbling & Co., who had made the repairs, to the First National Bank of Madison.

The libellant filed exceptions to the answer and claim, insisting that it did not show that the claimant had any interest in the property nor on whose behalf the claim was filed.

The claimant also filed a motion to dismiss the libel for the reason that the claim, having been assigned, the lien was divested.

Upon argument, the court sustained the

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

exceptions to the answer and claim; and it appearing upon the face of the libel that the claim had been assigned, the court held that the assignment of the claim did not carry with it the lien upon the vessel, and therefore no action in rem could be maintained for the use of the assignee.

The libellant thereupon asked leave to amend the libel, which was granted, and leave was also given the claimant to file an answer and claim to the amended libel when filed. The amended libel was filed in the name of Cobb, Stribbling & Co., leaving out all statement of the assignment of the claim to First National Bank of Madison.

The claimant, W. G. McCoy, filed to the amended libel an amended answer and claim. This amended answer and claim is sworn to by George W. McCoy, agent; in the verification he states that W. G. McCoy is out of the district, and that he believes the facts set forth in the answer are true.

The libellant excepts to the amended answer and claim, and the claimant moves to dismiss the amended libel, but, without disposing of the exceptions and motion, the case was heard upon the evidence. The 26th rule in admiralty provides that "In suits in rem the party claiming the property shall verify his claim on oath or solemn affirmation, stating that the claimant by whom, or on whose behalf the claim is made, is the true and bona fide owner, and that no other person is the owner thereof;" and where the claim is put in by an agent he shall make oath that he is duly authorized thereto by the owner.

In the case of U. S. v. 422 Casks of Wine, 1 Pet. [26 U. S.] 547, Justice Story, in speaking of the objection that the claimants were not the real owners of the wine, says: "In such suits the claimant is an actor and is entitled to come before the court in that character in virtue of his proprietary interest in the thing in controversy."

And in The Revenue Cutter No. 1 [Case No. 11,713], Judge Wilson says: "It is not sufficient to entitle a party to intervene and defend, when it is simply shown that he has an interest in the question litigated. He must have rights in the vessel itself; that is, an ownership, either general or special, in the property, or such a claim as operates directly upon it by way of a lien, statutory or maritime." In Read v. Owen, 9 Port. [Ala.] 180, it is held that a claimant of an interest of a ship, or any other thing, which is the subject of a proceeding in rem must put in his claim on oath averring his interest; and an agent must have his authority before he can put in his claim. The same doctrine seems to be held by Mr. Conkling (2 Adm. 207). In The Lottawana, 20 Wall. [87 U. S.] 222, Justice Clifford says: "Defense may be made to a suit in rem by any person having an interest in the thing seized."

It nowhere appears in the amended answer and claim that the claimant, W. G. McCoy, is the owner of this steamboat; that he has any interest therein or lien thereon, and he can, therefore, have no standing in this court.

The amended libel shows that repairs were made by libellants upon the steamboat, and by the admiralty law they had a lien upon it for the payment thereof.

But the proof in the case shows that the libellants had settled with the then owners of the boat and taken their promissory note therefor, and that subsequently they had assigned the note to the First National Bank of Madison, which had discounted for them and held it at the time of the commencement of the suit.

It is claimed, however, that subsequently the libellants, as indorsers, paid to the bank the amount of said note, and are now the holders thereof. That the taking of a negotiable note, unless received as payment, does not operate as a waiver of the lien is too well settled to need the citation of authorities.

The claim is still retained and may be assigned by the person in whose favor it originally existed, but the lien is personal and can not be assigned. The assignment of the note or other evidence of the claim does not, therefore, carry with it the lien, but the assignee takes it divested of the lien. Sturtevant v. The George Nicholaus [Case No. 13,578]; Patchin v. The A. D. Patchin [Id. 10,794]; Logan v. The Aeolian [Id. 8,465]; Ruk v. The Freestone [Id. 12,143]; Reppert v. Robinson [Id. 11,703]; Harris v. The Kensington [Id. 6,122]; The Champion [Id. 2,583].

A different doctrine would seem to have been held in The Boston [Id. 1,669], and in The General Jackson [Id. 5,314], but in the former case the assignment was made at the request of the master; and in the latter, the assignment was a collateral security for a debt which was afterward paid by the assignor. So that these cases when properly understood cannot be said to militate against the general doctrine as I have announced it. If, then the transfer of the note to First National Bank of Madison did not carry with it the lien, what was the effect of such transfer upon the lien?

Did it remain in full life in Cobb, Stribbling & Co., or was it extinguished? The lien, as we have said, was personal to Cobb, Stribbling & Co., to secure to them the payment of the debt. When, therefore, they had transferred this debt, and parted with all their interest in it, there was no longer anything remaining in them to which the lien could attach or be an incident. Therefore, ex necessitate, it became extinct.

The fact that they indorsed the note, and as indorsers were subsequently compelled to pay the note, can make no difference. Their liability as indorsers arose from their contract with the bank, and not with the own-

ers of the boat, and their subsequent payment of the note under it could not bring again into life that which was extinct.

Libel dismissed, each party to pay half the costs.